2003 WY 5

**In the Matter of the Worker's Compensation Claim of:**

**Penny HIMES, Appellant (Employee–Claimant),**

v.

**PETRO ENGINEERING & CONSTRUCTION, Appellee (Employer–Objector),**

and

**State of Wyoming ex rel. Wyoming Workers' Compensation Division, Appellee (Objector–Defendant).**

No. 01–65.

Supreme Court of Wyoming.

Jan. 15, 2003.

---

James W. Gusea, Cheyenne, Wyoming, Representing Appellant.

Hoke MacMillan, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant

Attorney General; David L. Delicath, Assistant Attorney General, Representing Appellee State of Wyoming ex rel. Wyoming Workers' Compensation Division. Argument by Mr. Delicath.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Worker's compensation claimant appeals from a determination from the Medical Commission Hearing Panel that she is not entitled to a permanent partial impairment rating above the fifteen percent she has already received from the Division. Finding no error, we affirm.

## ISSUES

[¶ 2] Appellant presents two issues:

I. Was the decision of the Medical Commission contrary to Penny Himes' constitutional right to due process; and was the decision of the Medical Commission without observance of procedure required by law in that the decision purported to determine issues that had not been raised?

II. Was the decision to uphold the permanent impairment rating of only 5% unsupported by substantial evidence in that both of the physicians hired by the Division reported the employee/claimant was unable to work at the time of their examinations?

Appellee simplifies the issues thus:

I. Did the Medical Commission determine issues that were not properly before it in violation of Appellant's right to due process?

II. Did substantial evidence support the Medical Commission's determination that Appellant is not entitled to an increased permanent impairment rating?

## FACTS

[¶ 3] In 1990, Penny Himes was involved in a non-work related automobile accident in which she sustained whiplash type injuries.

---

* Chief Justice at time of oral argument

She testified that these injuries were resolved by 1992. On November 17, 1992, Himes was involved in a work related accident while handling scaffolding. She currently alleges she suffered neck, back and shoulder injuries as a direct result of the work related accident. She visited the hospital emergency room on November 18, 1992, and the nurse's report from that visit indicates that Himes complained of pain in the right lower lumbar region and numbness in both legs, burning up to the shoulders, and migraine headache. There was also an indication of left thoracic pain. The diagnosis was lumbar strain.

[¶ 4] The Workers' Compensation Division (the "Division") initially awarded Himes temporary total disability. She was evaluated in December 1993 by Dr. Meade Davis. Dr. Davis opined that "the on-the job-injury of November 17, 1992, substantially aggravated a prior existing injury to her neck and back from a car accident in September 1990." He stated that he believed she could benefit from appropriate physical therapy but, if given a current physical impairment rating, he would rate her at 4% whole body impairment. In May 1994, the Division and Himes stipulated and agreed to a 4% whole body permanent physical impairment rating.

[¶ 5] According to Himes, she continued to receive treatments from Jonathan Singer, D.O., between 1993 and 1996 for back and neck pain with some mention of shoulder pain. Himes testified that she saw him on a diminishing basis, eventually as infrequently as once every six months. Himes testified that her condition deteriorated during that time. In 1996 Himes discontinued treatment with Dr. Singer and went instead to a chiropractor who referred her to Dr. Ken Pettine, an orthopedic surgeon. Dr. Pettine first saw Himes in May 1996. In January 1997, Dr. Pettine performed surgery on Himes including fusion at C6 C7 and at L6 S1. After this surgery Himes was evaluated by Dr. Bruce Lockwood. Dr. Lockwood concluded that Himes had sustained an ascertainable loss and gave her a 5% impairment rating for her lumbar spine and a 5% impairment rating for her cervical spine, for a total 10% whole body impairment rating. Dr. Lockwood suggested

that, although he did not have sufficient information to ascertain an acceptable apportionment, it would be appropriate to apportion the impairment between the injuries caused by the automobile accident and the injuries caused by the work accident. Despite Dr. Lockwood's suggestion of apportionment, the Division awarded Himes a 10% permanent partial impairment rating. On April 9, 1998, the Division and Himes further stipulated and agreed to an increase in the permanent physical impairment rating to 15% whole body impairment.

[¶ 6] Shortly after this stipulation and agreement was accepted, Himes underwent surgery on her right shoulder and then surgery on her thoracic spine. The Division paid for both procedures. In 1999 Himes underwent another surgery to her cervical spine that was directly related to her 1997 fusion surgery. The Division again paid for this cervical spine surgery. Although the record is silent as to what next transpired, it appears that Himes then applied for yet another increase in her permanent partial impairment rating. The Division requested Himes be evaluated by Dr. Michael Kaplan. The Division requested that Dr. Kaplan assess only the impairment to the cervical spine. Dr. Kaplan rated her at 5% whole body impairment with regard to the cervical spine only.

[¶ 7] While the record before this Court is devoid of any objection from Himes, in her brief and in her argument before the Commission she suggests that she objected to the rating at least in part because of its limited scope. She wanted a rating for her thoracic spine and shoulder impairments as well as her cervical and lumbar spine. Seemingly in response to this objection to the first rating, the Division sent Himes to Dr. Mark Rangitsch for a second evaluation. The Division, however, maintained that the scope of the rating was for the cervical spine only. Dr. Rangitsch also rated Himes at 5% impairment with regard to the cervical spine only. Dr. Rangitsch also mentioned that the lack of medical intervention between 1993 and May 1996 led him to question if the cervical spine impairment was attributable to the work accident.

[¶ 8]   Since neither impairment rating was above the 5% rating received earlier by Dr. Lockwood for her cervical spine, the Division denied Himes' application for an increase in her permanent partial impairment rating. Himes requested a contested case hearing. The Division referred the matter to the Office of the Medical Commission.   At the hearing, Himes argued that she should not be subject to a permanent impairment rating because she had not yet attained a level of ascertainable loss.   Himes wanted a reinstatement of her temporary total disability benefits.   In the alternative, since both Dr. Kaplan and Dr. Rangitsch also stated she was not capable of working yet, she argued that her impairment rating obviously must be much higher, and it would be if all her medical impairments were rated, not just her cervical spine impairment.

[¶ 9]   The Commission found that Himes had reached a level of ascertainable loss and that she was not entitled to a greater impairment rating than the 15% she already had been awarded.   The Commission specifically found that Himes failed to carry her burden of proof that any of her current medical impairments are related to her 1992 work accident.   The Division then contacted her health care providers and informed them that it would no longer pay for any medical treatment for Himes.   Himes timely appealed the decision of the Commission to the district court, which certified the appeal to this Court pursuant to W.R.A.P. 12.09.

## STANDARD OF REVIEW

[¶ 10]   We review appeals certified to us pursuant to W.R.A.P. 12.09 applying the appellate standards that are applicable to a reviewing court of the first instance.   *Weaver v. Cost Cutters,* 953 P.2d 851, 854 (Wyo.1998). W.R.A.P. 12.09(a) limits judicial review of administrative decisions to a determination of those matters that are specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency

action.   In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error.   The reviewing court shall:

> (i) Compel agency action unlawfully withheld or unreasonably delayed;  and

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

>> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

>> (B) Contrary to constitutional right, power, privilege or immunity;

>> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

>> (D) Without observance of procedure required by law;  or

>> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 11]   The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act are questions of law over which we exercise plenary review.   We afford no deference to an agency's conclusions of law and will affirm the same only if they are in accord with the law. *Weaver,* 953 P.2d at 855 ("When an agency has not invoked and correctly applied the correct rule of law, we correct the agency's errors.")

[¶ 12]   When both parties submit evidence in a contested case in which factual issues are involved, we review the case under the substantial evidence test.   *Newman v. Wyo. Workers' Comp. Div.,* 2002 WY 91, ¶ 22, 49 P.3d 163, ¶ 22 (Wyo.2002).   In determining whether substantial evidence supports an agency decision, we examine the entire record.   If substantial evidence exists to support an agency decision, we will not substitute our judgment for the judgment of the agency and will affirm the agency decision.   *Id.* at ¶ 24.

## DISCUSSION

[¶ 13] Himes' issues are best resolved by first looking at the contested case hearing procedure. Himes requested a modification of her benefits. A modification can only be granted pursuant to the terms of Wyo. Stat. Ann. § 27–14–605(a) (LexisNexis 2001) that allows, in pertinent part, "for a modification of the amount of benefits on the ground of increase ... of incapacity due solely to the injury." Himes argued she was entitled to an increase in her permanent physical impairment (PPI) rating because she had suffered an increase in incapacity due to numerous physical impairments that had arisen as the result of her work accident.

[¶ 14] The fact that the Division had paid medical benefits for Himes' various medical conditions in the past did not preclude the Division from challenging Himes' request for a higher PPI rating. *Hall v. State ex rel. Wyoming Workers' Comp. Div.*, 2001 WY 136, ¶ 14, 37 P.3d 373, ¶ 14 (Wyo. 2001) ("The Division's uncontested award of benefits is not a final adjudication that precludes the Division from challenging future benefits."); *see also Tenorio v. State ex rel. Wyoming Workers' Comp. Div.*, 931 P.2d 234, 239 (Wyo.1997). Once Himes requested an increase in her PPI rating, it became her burden to prove all essential elements of her claim by a preponderance of the evidence:

A claimant is not guaranteed future benefits on the basis of a prior award. Further, it is not the burden of the employer or the Division to prove that a claimant is *not* entitled to a continuation of ... benefits. Rather, the claimant has the burden of showing that he is entitled to a continuance of benefits. With respect to outstanding claims for worker's compensation benefits, the claimant bears the burden of proving all essential elements of his claim by a preponderance of the evidence.

*Snyder v. State ex rel. Wyo. Workers' Comp. Div.*, 957 P.2d 289, 293 (Wyo.1998) (citations

omitted). One essential element was relating all the physical ailments of which Himes was complaining to the work accident. Another essential element was providing medical evidence of a statutorily acceptable PPI rating for all such physical ailments.

[¶ 15] At the hearing then, Himes had an affirmative duty to present evidence that she was entitled to a higher PPI rating due to injuries related to her work accident. A thorough review of the record reveals that, at the hearing, Himes only argued that the doctors who provided an impairment rating should not have limited their ratings to her cervical spine condition. She did not present any credible evidence that her other physical impairments such as her thoracic or shoulder conditions were related to her work accident. Further, Himes presented absolutely no evidence on the issue of her PPI rating. She did not present any medical evidence that her cervical spine condition was improperly rated. She did not present any medical evidence regarding a proper rating for any of her other medical conditions. Himes simply failed to offer any evidentiary basis to support a higher PPI rating than the 15% she had already been awarded. Given the state of the evidence, the Commission would have erred had it awarded a higher PPI rating.

[¶ 16] Himes' arguments on appeal confuse the burden of proof. In her second issue, Himes alleges the Commission committed error by upholding the PPI rating of 5% to her cervical spine. She argues the 5% was not supported by substantial evidence.[1] This argument fails to recognize that it is not the Division's burden to substantiate its PPI rating; it is her burden to prove she is entitled to a higher PPI rating.

The burden is assigned to the claimant ... to establish every essential element of his claim by a preponderance of the evidence. *Deroche v. R.L. Manning Company*, Wyo., 737 P.2d 332 (1987); *McCarty v. Bear Creek Uranium Company*, Wyo., 694

1. To the extent Himes references her ability to work in the phrasing of her issue, it is misleading. The only issue before the Commission was Himes' PPI rating. A PPI rating is strictly a medical question and is unrelated to the claimant's ability to work. "An injured employee's

impairment shall be rated by a licensed physician using the most recent edition of the American Medical Association's guide to the evaluation of permanent impairment." Wyo. Stat. Ann. § 27–14–405(g) (LexisNexis 2001).

P.2d 93 (1985); *Alco of Wyoming v. Baker,* Wyo., 651 P.2d 266 (1982). The Wyoming rule is in accord with the general rule requiring that the party asserting a change of condition (increase or decrease of incapacity) must assume the burden of proof whether the party be claimant or employer. 3 A. Larson, Workmen's Compensation Law § 81.22(c) (1983). In invoking § 27–12–606, W.S.1977 [precursor to § 27–14–605(a)], [the claimant] assumed the burden of demonstrating "increase of incapacity due solely to the injury."

*Lehman v. State ex rel. Wyoming Workers' Comp. Div.,* 752 P.2d 422, 425 (Wyo.1988).

[¶ 17] Instead of putting on affirmative proof of the essential elements of her claim, she simply argued that the Division incorrectly limited the scope of the impairment rating. The primary argument advanced in her brief is that the "matter should be remanded to the Division for an appropriate rating with regard to all of the problems previously treated operatively, including her shoulder, thoracic and lumbar spine." The purpose of the contested case hearing was for her to prove the nature and extent of her permanent physical impairments and that such impairments were directly related to her work accident. She failed to do so. The Commission correctly refused to grant Himes a PPI rating above the 15% she has already been awarded because she failed to carry her burden of proving all essential elements of her claim to a higher PPI rating.

[¶ 18] Himes' first issue also fails to recognize her burden of proof and required administrative hearing procedures. The Commission included in its order specific findings that Himes did not meet her burden of proving that her current physical complaints are related to her work injury. Himes argues that the Commission should not have made specific findings regarding causation of her current medical complaints. Her primary contention in this regard is that causation was at issue only as a defense to her claim, "not as an ultimate issue to be decided by the Medical Commission."

[¶ 19] Causally relating her current medical complaints to her work accident was, of course, an essential element of her claim and thus directly at issue. The Commission made specific findings in its order that she did not meet her burden proving that any of her current medical complaints were related to her work accident. These findings by the Commission are not only appropriate, but also required. Pursuant to the Wyoming Administrative Procedure Act (W.A.P.A.) the Commission is charged with including in its final decision "findings of fact and conclusions of law separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." Wyo. Stat. Ann. § 16–3–110 (LexisNexis 2001). We have interpreted this statutory requirement rather extensively:

Our rule is that this statutory provision demands findings of basic facts upon all material issues in the proceeding and upon which the ultimate findings of fact or conclusions are based. *FMC v. Lane,* 773 P.2d 163 (Wyo.1989). In *Cook v. Zoning Board of Adjustment for the City of Laramie,* 776 P.2d 181, 185 (Wyo.1989), we stated:

"It is insufficient for an administrative agency to state only an ultimate fact or conclusion, but each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis each ultimate fact or conclusion was reached. The court must know the why." *Geraud v. Schrader,* 531 P.2d 872, 879 (Wyo.), *cert. denied sub nom. Wind River Indian Education Association, Inc. v. Ward,* 423 U.S. 904, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975).

*Mekss v. Wyoming Girls' School, State of Wyo.,* 813 P.2d 185, 201–02 (Wyo.1991), *cert. denied,* 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). Given the requirement of strict compliance with § 16–3–110, the Commission was obligated to include in its order the findings upon which it based its denial of an increased PPI rating. This included findings regarding the issue of causation with regard to each medical condition Himes put at issue.

[¶ 20]   While there is no error in the Commission's making specific findings regarding causation and putting those findings in its order, we are told that the Division has used those findings to inform health care providers that it will not pay for any future medical treatments for Himes.   It is important to note that the order of the Commission contains no language regarding future benefits. The separate actions of the Division are not properly before this Court on this appeal. The Division, however, concedes in its brief that it should not have made any decisions regarding Himes' eligibility for future benefits.[2]   The Division states in its brief that Himes may submit additional claims for future benefits and will be entitled to a hearing if such are denied.

[¶ 21]   Himes is not satisfied with this concession, however, because, as long as the findings regarding causation are in the order, she faces a potential problem.   This potential problem is the result of the operation of the fundamental doctrines of law known as res judicata and collateral estoppel.   *See Slavens v. Board of County Comm'rs for Uinta County*, 854 P.2d 683, 685 (Wyo.1993) ("This court has held that both res judicata and collateral estoppel apply to final adjudicative determinations by administrative tribunals."[3] )   The effect of the doctrines of res judicata and collateral estoppel should be well known to all attorneys.   If certain conditions are met, the doctrines prevent claims and issues adjudicated in a prior contested proceeding from being relitigated between the same parties.   It is not for this Court to decide if the doctrine of res judicata or collateral estoppel will apply in a future proceeding.   We only note that they are available as potential defenses to the Division in a future proceeding

for benefits, and it is this possibility to which Himes objects.

[¶ 22]   Himes   strongly   urges this Court to view the issue in terms of a violation of due process.   She does not, however, present any legally supported constitutional argument in her brief.   Her due process argument is that she was never warned that she might lose future benefits as a result of findings made during the course of the instant   proceeding.     Unfortunately   for Himes, the potential availability of the defense of res judicata or collateral estoppel in a future proceeding simply does not present a due process violation.[4]   She phrases her argument in terms of the Division's determining issues that had not been raised, and thus she had no notice, but, as has been discussed already, she put causation directly at issue by bringing her claim.   No due process violation is presented by the Commission's findings that Himes failed to meet her burden of proving that her current medical conditions are related to her work accident.

## CONCLUSION

[¶ 23]   This case presents no due process violations.   By requesting a modification in benefits, Himes put all elements of her claim at issue, including whether or not her current complaints regarding physical impairments are related to her work accident.   The Commission is required under the W.A.P.A. to make findings on these issues.   That there might be collateral consequences to this procedure does not implicate any constitutional due process issues.   The Division has confessed that the decision of the Commission

---

**2.**   These decisions should only be made once a request for benefits is submitted.   *See In re Wright*, 983 P.2d 1227, 1233 (Wyo.1999) ("the Commission lack[s] subject matter jurisdiction over future claims").

**3.**   The Commission clearly qualifies as an administrative tribunal pursuant to Wyo. Stat. Ann. § 27–14–616(b)(iv) (LexisNexis 2001): "When hearing a medically contested case, the [Commission] panel shall serve as the hearing examiner and shall have exclusive jurisdiction to make the final administrative determination of the validity

and amount of compensation payable under this act."

**4.**   We note that, while the existence of the potential defense of res judicata or collateral estoppel does not raise due process concerns, the actual application of such defenses might.   "[E]xtreme applications of the doctrine of res judicata may be inconsistent with a federal right that is 'fundamental in character.' "   *Richards v. Jefferson County, Alabama*, 517 U.S. 793, 797, 116 S.Ct. 1761, 1765, 135 L.Ed.2d 76 (1996).

should not have been used to directly cut off future benefits so hopefully that issue is resolved.

[¶ 24] The Commission's denial of Himes' request for a higher PPI rating is supported by the record. Himes failed to present evidence supporting that she was entitled to a modification in her benefits.

[¶ 25] Affirmed.