2005 WY 90

**Carl SPLETZER, Appellant (Petitioner/Employee–Claimant),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Objector–Defendant).**

**No. 04–116.**

Supreme Court of Wyoming.

Aug. 9, 2005.

Representing Appellant: Michael D. Newman of Hampton & Newman, LC, Rock Springs, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; and Kristi M. Radosevich, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] Between 1987 and 1990, the appellant, Carl Spletzer (Spletzer), suffered compensable work-related injuries when he inhaled toxic fumes while working as a welder. From approximately 1990 to 2001, the Wyoming Workers' Safety and Compensation Division (the Division) paid medical benefits for treatments related to Spletzer's injury. However, in December of 2001, the Division denied three claims submitted by Spletzer finding that they were not related to his 1990 work-place injury. Spletzer requested a contested case hearing and the matter was referred to the Office of the Medical Commission (the Commission). The Commission found that Spletzer failed to meet his burden of proving that his 2001 claims were related to his compensable work injury. Spletzer appealed the Commission's decision to the district court. After the district court affirmed, Spletzer filed a timely appeal to this Court.

## ISSUES

[¶ 2] Spletzer presents four issues for our review:

1. Did the Medical Commission exceed its subject matter jurisdiction by ruling on an issue that was not referred to [it]?

2. Did the Medical Commission follow proper procedure required by law?

3. Did the Medical Commission act arbitrarily, capriciously, abuse its discretion, or otherwise not act in accordance with law within the meaning of W.S. § 16–3–114(c), in denying Appellant's medical treatment of chronic respiratory and arthritic conditions?

4. Was the Medical Commission's decision denying benefits supported by substantial evidence within the meaning of W.S. § 16–3–114(c)?

## FACTS

[¶ 3] From 1987 through 1991, Spletzer was employed by Sunland Services as a welder at a Chevron fertilizer plant in Rock Springs. He described the work environment as follows:

I was working on a shutdown in the plant where they were taking pipes apart, taking equipment apart, replacing equipment. They would wash everything down, but there would still be active fumes in the plant. And I was working in the plant. We were working 16, 18–hour days five days a week, seven days a week. All I would know is I would be working in the plant like maybe two or three days and I would wake up the next morning with a terrific sore throat, headache, flulike symptoms, real tremendous body aches. I would have to take a day off work or two days off work. I wouldn't get any better. I would lose my voice. Then I would go to a physician and they would prescribe medicine for me.

As a result of those ailments, Spletzer filed a worker's compensation claim on March 27, 1990. On December 5, 1990, the Division issued a formal determination stating that it would "review, audit and pay claims related to bronchitis, but will not allow any claims to be paid on conditions related to arthritis." The Division paid for treatment and diagnosis of Spletzer's medical condition over the course of several years.

[¶ 4] In August of 2001, the Division requested that Dr. Terry Brown perform an independent file review in order to provide the Division with an opinion regarding whether Spletzer's ongoing medical conditions were related to or caused by the 1987–1990 work-related exposure to toxic chemical fumes. Dr. Brown's review encompassed Spletzer's medical records from July 1987 through February 2001. The Division requested that Dr. Brown answer five specific questions, which questions, and Dr. Brown's responses, follow:

1. **What current ailments are directly attributable to the 1990 hazardous materials exposures while working at SF Phosphates Fertilizer plant in Rock Springs?**

There is minimal to no documentation of any incident of significance in 1990. Virtually all workups from Dr. Goldstein in 5/90 to Dr. Kanner in 7/92 all refer back to 1987 exposures while working at Chevron. Nonetheless having the luxury of reviewing over a decade of medical records, it is apparent that it is not possible to say that any of Mr. Spletzer's medical problems are relatable in any way to exposures that occurred while at work, inasmuch as he had had persisting symptoms which have been primarily subjective with minimal to no objective evidence for his subjective complaints in terms of his pulmonary and musculoskeletal workup and examination. He has changed employment several times with no change in his symptoms, and the medical records appeared to look for documentation of excessive exposures and none were able to be documented. These facts give credence to the conclusions drawn as far back as 1990 and 1992 by very thorough physicians that it was not possible to attribute his symptoms to any specific event and, in fact, fibromyalgia syndrome and/or depression appear to be the most appropriate diagnoses and the ones most in keeping with the complaints he has had. Neither of these would be work related.

2. **Would exposure to such substances in the amounts reported cause the long-term problems Mr. Spletzer reports?**

No.

3. **Regarding his pulmonary status, what is the most likely cause of his**

continuing complaints, and is it directly attributable to the 1990 exposure or to other causes?

Evaluation by an excellent pulmonologist, such as Dr. Kanner, who is well known to me, have resulted in no definitive conclusions. This would be in keeping with the trend through this decade for him to have ongoing symptoms despite changing jobs several times. I would concur with the opinions of the evaluators in the records that it is not possible within a reasonable degree of medical certainty to establish a causal relationship between his complaints in 1990, and certainly later, and any exposures that occurred from 1987 to 1990.

4. **Does he suffer from arthritis that is attributable to the hazardous materials exposure or is it likely due to other causes?**

His subjective complaints of arthritic pain that have not been objectified on physical examination to any significant extent or on radiographic examinations are not attributable, within a reasonable degree of medical certainty, to any exposures at work, and in fact have not been definitively attributed to any medical diagnosis. He has had a very thorough workup, and as one reads through these records over the years, concerns with his psychological status grow in this reviewer's mind, not only regarding existing concurrently with all of his complaints, but also perhaps providing a cause for his complaints. At some point, a very thorough neuropsychiatric evaluation with neuropsychological testing would have been of interest.

5. **At this time, what current medical condition that Mr. Spletzer receives ongoing treatment for should be the Division's responsibility, in that the Division is responsible for the treatment of work related injuries for the life of the claimant?**

None. As noted, there is no evidence on this review, nor did there appear to be any opinion from any of the evaluating physicians that a causal relationship could be established within a reasonable degree of medical certainty between his complaints and any work related exposures. I feel that while they drew these conclusions in 1990 through 1992, given the ongoing symptoms, it is even more possible to state in 2001 that it is impossible to establish or consider any causal relationship.

[¶ 5] After receiving Dr. Brown's evaluation, the Division denied three of Spletzer's claims in September and October of 2001. Spletzer objected to the Division's denial and, in November of 2001, the matter was referred to the Commission for a contested case proceeding.

[¶ 6] In June of 2003, prior to the contested case hearing, Spletzer contacted Dr. Phyllis Mullenix, PhD., whom he discovered while researching on the Internet. Dr. Mullenix is not a practicing medical doctor, but holds a degree in zoology and chemistry, and a PhD. in pharmacology, and engages primarily in research and consulting. Spletzer requested that Dr. Mullenix prepare a report assessing the causation of his medical problems. Dr. Mullenix conducted an extensive review of Spletzer's medical history, and summarized her report by answering the same questions previously posed to Dr. Brown. Her assessment of the relatedness of Spletzer's current conditions to the original injury differed significantly from Dr. Brown's:

1. **What current ailments are directly attributable to the 1990 hazardous materials exposures while working at SF Phosphates Fertilizer plant in Rock Springs?**

The respiratory, musculoskeletal, neurological, gastrointestinal, dermal and dental ailments listed above are directly attributable to the 1990 hazardous materials exposures at the fertilizer plant in Rock Springs.

2. **Would exposure to such substances in the amounts reported cause the long-term problems Mr. Spletzer reports?**

Yes.

3. **Regarding his pulmonary status, what is the most likely cause of his continuing complaints, and is it directly attributable to the 1990 exposure or to other causes?**

The most likely cause of his respiratory complaints is the fluoride exposure he experienced at the fertilizer plant. That exposure was to intermittent large doses that accumulated a fluoride reservoir in his bones that takes years to diminish even when there is no subsequent fluoride exposure. Although he left the plant in 1990, his fluoride exposure has continued through his subsequent jobs as a welder and his consumption of fluoride in food, water and pharmaceuticals. In essence, the fluoride exposures after 1990 keep topping off his bone reservoir of fluoride. The 1990 exposures, as they built up his total body burden of fluoride, determined that hence forward he could not tolerate even small exposures. But for the workplace exposure at the Chevron plant, Mr. Spletzer would not be experiencing his symptoms today.

. . .

4. **Does he suffer from arthritis that is attributable to the hazardous materials exposure or is it likely due to other causes?**

Yes, he suffers from arthritis attributable to the 1990 exposure. His medical and employment histories indicate that there are no other causes more probable.

5. **At this time, what current medical condition that Mr. Spletzer receives ongoing treatment for should be the Division's responsibility, in that the Division is responsible for the treatment of work related injuries for the life of the claimant?**

The Division's responsibility includes treatment of Mr. Spletzer's bronchitis and/or his developing COPD, his arthritic pain, his crumbling teeth and his problems with vision. If Mr. Spletzer's exposure is not stopped, the Division's responsibility will only expand to include even more serious health consequences.

In addition to her written report, Dr. Mullenix was deposed on July 16, 2003.

[¶ 7] On August 1, 2003, the Commission held a contested case hearing. Both Spletzer and the Division submitted disclosure statements and presented evidence. The Commission issued its Findings of Fact, Conclusions of Law and Order of the Medical Commission Hearing Panel on September 15, 2003. The Commission concluded Spletzer was ineligible to receive benefits because he "failed in meeting his burden of proof in establishing that his medical treatment after Sept 21, 2001 is directly and causally related to his employment at the Chevron fertilizer plant from 1987–1990."

[¶ 8] Spletzer appealed the Commission's determination and the district court affirmed. Spletzer then filed a timely notice of appeal with this Court.

## STANDARD OF REVIEW

 [¶ 9] We review agency action following contested case hearings in accordance with Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2003), which provides as follows:

"(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record

of an agency hearing provided by statute."

Furthermore, in *Hoff v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2002 WY 129, ¶¶ 5–8, 53 P.3d 107, ¶¶ 5–8 (Wyo.2002), we reiterated the proper application of the substantial evidence and arbitrary and capricious standards of review:

"Our standard of review when reviewing administrative agency action was recently clarified in the case of *Newman v. State ex. rel. Workers' Safety and Compensation Div.*, 2002 WY 91, 49 P.3d 163 (Wyo.2002). . . .

In appeals where both parties submit evidence at the administrative hearing, *Newman* mandates that appellate review be limited to application of the substantial evidence test. *Newman*, 2002 WY 91, [¶] 22, 49 P.3d 163. This is true regardless of which party appeals from the agency decision. In addition, this court is required to review the entire record in making its ultimate determination on appeal. *Newman*, at ¶ 19 and ¶¶ 24–26.

The substantial evidence test to be applied is as follows:

'In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.'

*Newman*, at ¶ 12 (quoting *State ex rel. Workers' Safety and Compensation Div. v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)).

Even when the factual findings are found to be sufficient under the substantial evidence test, *Newman* further concludes this court may be required to apply the arbitrary-and-capricious standard as a 'safety net' to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards. . . ."

*Kunkle v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 2005 WY 49, ¶¶ 7–8, 109 P.3d 887, 888–89 (Wyo.2005).

[¶ 10] The Commission found that Spletzer was not entitled to benefits because he failed to meet his burden of proof. We have said:

When the party charged with the burden of proof has failed to meet that burden, we review the case under the arbitrary, capricious, abuse-of-discretion, or otherwise-not-in-accordance-with-the-law standard. *Brees v. Gulley Enterprises, Inc.*, 6 P.3d 128, 132 (Wyo.2000); *Keck v. State ex rel. Wyoming Workers' Safety & Compensation Div.*, 985 P.2d 430, 432 (Wyo.1999).

"Under the arbitrary, capricious and abuse of discretion standard, we are charged with examining the entire record. In our examination and review of a hearing examiner's determination, we defer to the hearing examiner's findings of fact. We will examine conflicting and contradictory evidence to see if the hearing examiner reasonably could have made its findings based on all the evidence before it. The findings of fact may include determinations of witness credibility, as the hearing examiner is charged with determining the credibility of the witnesses. In our review, we will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence."

*In re Boyce*, 2005 WY 9, ¶ 6, 105 P.3d 451, 454 (Wyo.2005) (quoting *Brees v. Gulley Enterprises, Inc.*, 6 P.3d 128, 132 (Wyo.2000)).

[¶ 11] Finally, "[w]e afford no deference to the agency's legal conclusions. Statutory interpretation raises questions of law over which our review authority is plenary. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law." *Kunkle*, 2005 WY 49, ¶ 9, 109 P.3d at 889 (*citing Wesaw v.*

*Quality Maintenance,* 2001 WY 17, ¶ 8, 19 P.3d 500, 504 (Wyo.2001)).

## DISCUSSION

### Subject Matter Jurisdiction

[¶ 12] In the first of Spletzer's four appellate issues, he asserts that the Commission exceeded its subject matter jurisdiction. The Commission derives its jurisdictional authority from Wyo. Stat. Ann. § 27–14–616(b)(iv) (LexisNexis 2003), which statute provides in part:

Following referral by the division, the hearing examiner or medical hearing panel shall have jurisdiction to hear and decide all issues related to the written notice of objection filed pursuant to W.S. 27–14–601(k).... When hearing a medically contested case, the panel shall serve as the hearing examiner and shall have exclusive jurisdiction to make the final administrative determination of the validity and amount of compensation payable under this act.

Spletzer argues that in deciding the compensability of his current claims, the Commission went beyond its jurisdiction and re-determined the compensability of his original work-related injury. He articulates this argument in his appellate brief as follows:

The issue before the Commission was not the compensability of the initial claim or whether [Spletzer's] initial symptoms were related to his work related chemical exposures. These conditions had been previously determined to be work related. The issue referred to the Medical Commission was the relationship of the curr[e]nt treatment to the already established compensable injury and chemical exposures.

. . .

The issue of compensability of [Spletzer's] injuries was not before the Medical Commission. Accordingly, it did not have statutory authority to issue a ruling that based its conclusion that the evidence failed to show [Spletzer's] initial exposures and injuries were caused by the work related exposure to chemicals. The Medical Commission lacked subject matter jurisdiction to rule on an issue already decided and not properly presented to it by the Division.

[¶ 13] Spletzer is correct in his assertion that the Commission does not have jurisdiction to decide the compensability of previously determined claims. *Hall v. State ex rel. Wyoming Workers' Compensation Div.,* 2001 WY 136, ¶ 14, 37 P.3d 373, 377 (Wyo.2001). However, the Division clearly has jurisdiction to challenge and determine the validity of future claims for benefits. *Id.; Tenorio v. State ex. rel. Wyoming Workers' Compensation Div.,* 931 P.2d 234, 239 (Wyo. 1997).

The statutory language of the Wyoming Workers' Compensation Act confers finality on the benefits paid to the employee through uncontested determinations, subject to the exceptions found in Wyo. Stat. Ann. § 27–14–605.... The statutory language, however, does not guarantee a claimant future benefits on the basis of a prior award nor does public policy favor the payment of an unjustified worker's compensation claim.... Therefore, an employee/claimant must prove that he was entitled to receive benefits for all outstanding claims despite previous awards for the same injury.

*Hall,* 2001 WY 136, ¶ 14, 37 P.3d at 377 (citations omitted).

[¶ 14] Spletzer's interpretation of the Commission's decision as somehow affecting his previously awarded benefits is inaccurate. The Commission's order concluded that Spletzer "failed in meeting his burden of proof in establishing that his medical treatment after Sept 21, 2001 is directly and causally related to his employment at the Chevron fertilizer plant from 1987–1990." Clearly, this determination had no impact on any of Spletzer's prior claims. The Commission decided only those issues referred to it and did not exceed its jurisdiction in considering and deciding Spletzer's claims.

### Procedure

[¶ 15] Spletzer next argues that the Commission's decision was not in accordance with the procedure required by law. As a basis for his argument, Spletzer again as-

serts that "[a] careful reading of the Medical Commission's findings of fact clearly reveal[s] that their decision was simply another ruling on the compensability of the initial injury vers[u]s the relationship of the current medical treatment claims to the already established exposure and history." He then concludes that "[t]his is explicitly contrary to the statutory procedure setting forth the scope of the Medical Commission's review of the issue referred to them." For the reasons just set forth above, we reject this contention—it does not accurately state what the Commission did. Furthermore, Spletzer neither supports this argument with specific record references, nor cites legal authority, so we will not further consider the issue. *Hicks v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 2005 WY 11, ¶ 25, 105 P.3d 462, 472 (Wyo.2005).

### Arbitrary, Capricious, an Abuse of Discretion and Contrary to Law

[¶ 16] In Spletzer's third appellate issue, he claims that the Commission's decision was arbitrary, capricious, an abuse of discretion and contrary to law. Similar to his other arguments, he bases this assertion on the premise that the Commission inappropriately considered his prior claims. He states:

The Medical Commission's conclusion was that because past medical records ... do not support an injury or exposure, the current treatment claims are not related. This judgment and decision process resulted in reweighing the evidence on whether there was a[n] initial compensable injury. The Medical Commission reweighed this evidence and came to the conclusion that the current treatment was not related. This is an improper consideration and application of the evidence especially in light of the fact that a finding of compensability had previously been made. This is a[n] arbitrary and capricious administrative action. It is also a misapplication of the facts to the law.

[¶ 17] This analysis suffers from the same defect as Spletzer's previous argument inasmuch as nothing in the record supports his assertion that the Commission's determination of his current claims was based on a finding regarding the compensability of his prior claims. The Commission did not conclude, as Spletzer contends, that "because past medical records ... do not support an injury or exposure, the current treatment claims are not related." To the contrary, the Commission acknowledges that Spletzer was injured and received benefits. The Commission's order references a "Formal Determination" letter dated December 15, 1990, wherein the Division withdrew a prior objection to payment of benefits and stated that it would "review, audit and pay claims related to bronchitis...." The Commission made no findings regarding Spletzer's prior claims or the extent of his prior injuries.

[¶ 18] Spletzer also claims that the Commission, by examining his medical history, improperly re-weighed the evidence and re-determined his prior claims. As previously established, nothing in the record indicates that the Commission re-determined Spletzer's prior claims. Furthermore, any consideration of prior medical evidence in Spletzer's case was necessary in order to establish a causal link between his current claims and his prior work-related injuries. When a claimant requests benefits, he has the burden of proving all essential elements of his claim by a preponderance of the evidence. *Himes v. Petro Engineering & Const.*, 2003 WY 5, ¶ 14, 61 P.3d 393, 398 (Wyo.2003) (*quoting Snyder v. State ex rel. Wyoming Worker's Compensation Div.*, 957 P.2d 289, 293 (Wyo.1998)). One essential element of a claim for future benefits is demonstrating that the current medical condition is causally related to the compensable work-related injury. *Himes*, 2003 WY 5, ¶ 19, 61 P.3d at 399. It would be virtually impossible for a claimant to establish such causation without examining his prior medical records. Also, when an agency conducts a contested case hearing, Wyo. Stat. Ann. § 16-3-110 (LexisNexis 2005) requires that the agency's final order "be accompanied by a concise and explicit statement of the underlying facts supporting the findings." The Commission determined that Spletzer failed to establish a causal connection between his current claims and his work-related injury.

To support that finding, the Commission had a statutory obligation to consider and state underlying facts. Without examining Spletzer's medical history, the Commission would be unable properly to fulfill its statutory obligation to provide a concise statement of facts supporting its determination.

 [¶ 19] We will not reverse an agency decision for an abuse of discretion so long as the agency considered relevant factors in making its decision and the decision is rational. *Morgan v. Olsten Temporary Services,* 975 P.2d 12, 15 (Wyo.1999). Spletzer's medical records and claim history were relevant and necessary factors that the Commission was required to consider in determining the compensability of his current claims. The Commission did not abuse its discretion in determining Spletzer's claims, nor do we find its decision to be contrary to law or arbitrary and capricious.

### Substantial Evidence

 [¶ 20] Spletzer's final argument consists of two paragraphs, wherein he asserts that the Commission's decision is not supported by substantial evidence. In support of this contention, he argues that the report and analysis of his expert, Dr. Mullenix, was the "only competent relevant evidence presented by any of the parties." Spletzer concludes that the Commission did not properly consider Dr. Mullenix's decision because it became "mired in reweighing the medical and factual evidence from prior unsuccessful treatment of the work related injuries. . . ."

 [¶ 21] Spletzer's statement that Dr. Mullenix's report was the only competent and relevant evidence before the Commission is inaccurate. In addition to Dr. Mullenix's opinion, the Commission relied on Dr. Brown's report, which report provided a thorough analysis of Spletzer's medical conditions based on the same materials Dr. Mullenix used in making her assessment. The fact that Dr. Brown and Dr. Mullenix reached opposite conclusions does not make Dr. Brown's analysis any less relevant or competent. Where, as here, the Commission is presented with conflicting medical opinions, its responsibility, as the trier of fact, is to

determine relevancy, assign probative value, and ascribe the relevant weight given to the evidence presented. *Clark v. State ex rel. Wyoming Workers' Safety & Compensation Div.,* 934 P.2d 1269, 1271 (Wyo.1997). The Commission is in the best position to judge and weigh medical evidence and may disregard an expert opinion if it finds the opinion unreasonable or not adequately supported by the facts upon which the opinion is based. *Id.; Matter of Goddard,* 914 P.2d 1233, 1238 (Wyo.1996). With regard to Dr. Mullenix's opinion, the Commission stated:

> This Panel disagrees with Dr. Mullenix's assumptions regarding Mr. Spletzer's exposure. Using her logic, every employee at a phosphate fertilizer plant would be exposed to toxic levels of fluoride simply by the nature and location of their employment. This is an assumption that we are not willing to share. In Mr. Spletzer's case there is no evidence of atmospheric fluoride analysis, nor is there specific evidence that fluoride had been taken into the body and deposited in the bones or excreted in the urine.

[¶ 22] We have said that we will not "reweigh the evidence or re-determine facts or assess the credibility of witnesses so long as the decision of the hearing examiner is based on ' "relevant evidence which a reasonable mind might accept in support of the agency's conclusions." ' " *Morgan,* 975 P.2d at 15 (*quoting Clark,* 934 P.2d at 1272 and *Matter of Workers' Compensation Claim of Fansler,* 914 P.2d 156, 158 (Wyo.1996) and *Romero v. Davy McKee Corp.,* 854 P.2d 59, 61 (Wyo. 1993)). Our review of the record reveals that the Commission's decision was reasonable and supported by substantial evidence.

### CONCLUSION

[¶ 23] The Commission denied Spletzer benefits because he failed to meet his burden of proof in showing that his current claims were related to his original work-related injury. The Commission did not exceed its subject matter jurisdiction or commit procedural error in deciding Spletzer's claim. Also, the Commission's determination was not arbitrary, capricious, an abuse of discre-

tion or contrary to law, and its conclusions were supported by substantial evidence.

[¶ 24] We affirm the district court's decision which affirmed the Wyoming Medical Commission Hearing Panel's determination.