**IN THE SUPREME COURT, STATE OF WYOMING**

**2013 WY 81**

APRIL TERM, A.D. 2013

July 9, 2013

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

DAVID GREEN,

Appellant
(Petitioner),

v.                                                                S-12-0238

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS' SAFETY AND
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Campbell County*
*The Honorable John R. Perry, Judge*

*Representing Appellant:*
    James R. Salisbury of Riske & Salisbury, P.C., Cheyenne, WY.

*Representing Appellee:*
    Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy
    Attorney General; Michael J. Finn, Senior Assistant Attorney General; and Mattias
    L. Sayer, Assistant Attorney General.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]   David Green (Green) suffered a work-related injury to his lumbar spine in 2004 and received workers' compensation benefits for that injury. After surgery and reaching maximum medical improvement in 2005, Green accepted compensation for a 21% whole body permanent partial impairment (PPI). In 2010, following increased back pain, Green underwent additional surgery to his lumbar spine, for which he again received medical and temporary total disability (TTD) benefits. After reaching maximum medical improvement following the 2010 surgery, Green was again evaluated for a whole body PPI rating. The final rating was a 7% whole body PPI.

[¶2]   Because the 2010 PPI evaluation resulted in a rating that was less than the 2005 rating, the Wyoming Workers' Compensation Division (Division) issued a final determination denying a PPI award beyond the 21% already paid. Green appealed the Division's determination to the Wyoming Medical Commission (Commission). The Commission upheld the Division's determination, and the district court affirmed the Commission's decision. On appeal to this Court, Green argues that the Commission's decision is not in accordance with law, is not supported by substantial evidence, and is arbitrary and capricious. We affirm.

## ISSUES

[¶3]   Green states the issues for our review as follows:

> A.   Whether the Hearing Panel committed an error of law in its application of Wyoming Statute § 27-14-405(f) and (g) in denying [Green] permanent partial impairment benefits.
>
> B.   Whether the Hearing Panel Order is supported by substantial evidence and produces an arbitrary and capricious result to deny [Green] permanent partial impairment benefits.

## FACTS

[¶4]   Green suffered a work-related injury to his lower back on April 25, 2004, which was diagnosed as an L4-L5 disc herniation with severe radiculopathy. Dr. Lawrence Jenkins, Green's treating physician, noted the following concerning Green's condition in July 2004:

> This patient is 2 months out from an injury. He has underlying L4 spondylolysis pre-disposing him to injury to this disc, which occurred in the fall. He has severe ongoing radiculopathy which was not responsive to a single epidural

1

that was done at L3-4. This patient has just started physical therapy, and I would like him to proceed with that over the next couple of weeks, to see if it will make a difference, however, it appears that he may require surgery. I think the only surgery to consider in his case would be a L4-5 fusion, given the L4 spondylolysis and the potential for further instability following a straight laminotomy. He will be re-evaluated in 2 weeks.

[¶5]     Following a 2004 lumbar fusion surgery and a second surgery in 2005 to remove hardware, Dr. Jenkins, on September 29, 2005, reported to the Division that Green was deemed at ascertainable loss and was ratable for PPI benefits. Dr. Michael Kaplan conducted an independent medical examination of Green, and on October 20, 2005, issued an Impairment Rating. Dr. Kaplan confirmed that Green had reached maximum medical improvement, and he rated Green's impairment at the "21% whole person impairment level." In so rating Green's impairment, Dr. Kaplan commented, in part:

> Status post work-related injury involving the lumbosacral spine, ultimately diagnosed with bilateral L4 spondylolysis with instability, symptomatic, with a L4-5 and L5-S1 painful disc syndrome. The patient had additional observed anomalous L5-S1 anatomy with absent right S1 lamina and pedicle. Therefore his hardware system was modified, at the time of his fusion.
>
> He is fused from L4 through S1, and he had his hardware removed. Posterior iliac crest bone marrow was utilized for the Healos and Cellect system. The patient is reasonably pleased with his status, aside from some of the morning stiffness.
>                                         . . . .
>
> Under these circumstances given the accuracy and alternative methodology with the DRE lumbar spine calculation, I believe it is in far greater fairness to the patient to consider Table 15-3 on page 384. He has a category IV relevant to the successful surgical arthrodesis. Given his results and overall status, I would consider him at the **21% whole person impairment level.**[1]

---

[1]   Dr. Kaplan's evaluation does not indicate which edition of the AMA Guides he used in calculating Green's impairment rating. The Commission entered a finding that the 5th edition was the most current edition at the time of Dr. Kaplan's rating, and the Commission assumed Dr. Kaplan relied on that edition

2

. . . .

> The patient's history, examination findings, and diagnoses are as summarized. He is at the point of maximum medical improvement. It is unlikely that he should continue working full duty in the oil fields, given the lower likelihood that he will be capable of sustaining the stressors over the next 20 plus years pertaining to the exertion and the risk factors as such.
>
> He will retrain into a lighter field, it is not apparent that he needs a Functional Capacity Evaluation. I would predict that he may do quite reasonably well in a medium duty job, avoiding prolonged intervals of flexion, twisting, and lifting in the medium or greater capacity. He should also generally execute a change of position several times during the day for comfort. He should do quite well. I have no other recommendations.

[¶6]    On November 4, 2005, the Division issued a Notice of Permanent Partial Impairment Rating, which notified Green that "the permanent partial impairment of 21% for your whole body has been calculated to be $15,002.34." The notice further advised Green that he could accept the award or contest the award if he disagreed with the rating. On November 7, 2005, the Division received Green's response agreeing to the impairment rating and accepting the PPI award.

[¶7]    In July 2010, Green returned to Dr. Jenkins with reports of progressive pain in his back and both legs. Dr. Jenkins reported to the Division that Green's "MRI scan reveals a slight bulge at L3-4 with some posterior element hypertrophy, creating some moderate central stenosis. L2-3 shows disc degeneration. The areas within the fusion themselves look good." On September 2, 2010, Dr. Jenkins reported to the Division his impression that Green was suffering from "post fusion syndrome, junctional stenosis of L3-4." On October 18, 2010, Green underwent surgery, which included an L3 laminectomy, an L3-4 posterior lumbar interbody fusion (PLIF), an L3-4 and L4-5 posterolateral transverse process fusion, a discectomy, and the implanting of structural hardware to support the affected areas.

[¶8]    The Division did not dispute that Green's 2010 surgery was related to his original 2004 work injury, and Green received both medical and TTD benefits for the 2010 surgery. On March 14, 2011, the Division requested that Dr. Jenkins evaluate Green's

---

for purposes of the Commission's review of the Division's final determination. Neither Green nor the Division disputes that finding or assumption.

3

continuing need for TTD benefits and advise the Division whether Green had reached maximum medical improvement. Dr. Jenkins responded that Green had not yet reached maximum medical improvement from his 2010 surgery but was expected to by May 1, 2011.

[¶9] On May 4, 2011, on the Division's referral, Dr. Anne MacGuire performed an independent medical examination of Green for the purpose of establishing his PPI rating. Relying on the *AMA Guides to the Evaluation of Permanent Impairment*, 6th edition, Dr. MacGuire concluded that based on the three-level fusion of Green's lumbar spine, his whole body impairment was 7%. She explained:

> This individual has had a 3-level fusion of his lumbar spine for spinal stenosis. Going to the Sixth Edition of the AMA Guides to the Evaluation of Permanent Impairment, we will begin with table 17-4 on page 571. We have several options. (1) He has motion segment lesions at 3 vertebrae, which would place him in class I on table 17-4 under motion segment lesions. He does not have evidence of radiculopathy. Class I would assign him a 7% for default. The reason for the 2nd surgery was a spinal stenosis. However, the original reason for the surgery was the pars defect and herniation of the disk. Therefore, I think it is appropriate to leave him in class I. He would fall under degenerative spondylolisthesis under class I on page 572 with 7% as the default. He would also, for spinal stenosis, fall under class 1 on page 571 again with 7% as the default. We will leave in these classes. He will be assigned class I for motion segment lesions with a default level of 7%.

[¶10] On June 20, 2011, the Division issued a Final Determination of Permanent Impairment Benefit. The final determination notified Green of Dr. MacGuire's 7% whole body impairment rating and informed him that because of his original rating of 21%, he was not entitled to additional PPI benefits. Green objected to Dr. MacGuire's rating, and the Division referred him to Dr. Ricardo Nieves for a second rating evaluation. Dr. Nieves calculated Green's impairment rating as a "6% Whole Person Impairment." He included the following comments in his rating of Green:

> **Diagnosis:** L3 to S1 Fusion for lumbar spinal stenosis and disc protrusions. It is my professional opinion with a reasonable degree of Medical Probability that this examinee condition is at the point of Maximum Medical Improvement as it relates to the 04-25-04 work injury.

. . . .

> **Additional Questions:** Please state if the current problems are directly related to the original injury. Answer: yes. He developed adjacent level pathology at the L3-4 level from his previous fusion which was work related.

[¶11] On October 3, 2011, the Division issued a second final determination informing Green of Dr. Nieve's impairment rating and again notifying him that the Division was denying him additional PPI benefits because his impairment rating was lower than the 21% rating for which he had already received a PPI award. Green objected to the Division's final determination, and the Division referred the matter to the Commission for hearing. Following an evidentiary hearing on February 17, 2012, the Commission, on March 9, 2012, issued an order upholding the Division's final determination. The district court affirmed the Commission's ruling, and Green timely appealed to this Court.

## STANDARD OF REVIEW

[¶12] In an appeal from a district court's appellate review of an administrative decision, we review the case as if it came directly from the administrative body, affording no special deference to the district court's decision. *Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 28, ¶ 27, 297 P.3d 82, 89 (Wyo. 2013); *Deloge v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 154, ¶ 5, 264 P.3d 28, 30 (Wyo. 2011). Our review of administrative decisions is in accordance with the Wyoming Administrative Procedure Act, which provides:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or

5

otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c)(ii) (LexisNexis 2013).

[¶13] Under this statute, we review an agency's findings of fact by applying the substantial evidence standard. *Jacobs v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 62, ¶ 8, 301 P.3d 137, 141 (Wyo. 2013); *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). Substantial evidence means relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Jacobs*, ¶ 8, 301 P.3d at 141; *Bush v. State ex rel. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005). "'Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings.'" *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011) (quoting *Bush*, ¶ 5, 120 P.3d at 179).

[¶14] The arbitrary and capricious standard of review is used as a "safety net" to catch agency action that prejudices a party's substantial rights or is contrary to the other review standards, but is not easily categorized to a particular standard. *Jacobs*, ¶ 9, 301 P.3d at 141. "The arbitrary and capricious standard applies if the agency failed to admit testimony or other evidence that was clearly admissible, or failed to provide appropriate findings of fact or conclusions of law." *Id.* "'We review an agency's conclusions of law *de novo,* and will affirm only if the agency's conclusions are in accordance with the law.'" *Kenyon*, ¶ 13, 247 P.3d at 849 (quoting *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010)).

## DISCUSSION

[¶15] In upholding the Division's final determination denying additional PPI benefits, the Commission concluded, in relevant part:

6

23.     Green has argued that because he had another surgery in October, 2010, extending his fusion one level, he must *a fortiori* have suffered an increase in permanent impairment.  While an additional surgery may be a second compensable injury, it does not alone represent a greater permanent impairment.  The purpose of the surgery in October 2010 was to alleviate the pain Green was experiencing.  Whether it accomplished that purpose, it did not increase his permanent impairment rating under the AMA *Guides*, 6th edition.

24.     In performing their respective impairment ratings, Dr. MacGuire and Dr. Nieves clearly took into consideration Green's October 2010 surgery. (E/C 8, pg. 6; E/C 13, pg. 7).  The AMA *Guides* 6th edition uses a "whole person" approach to evaluating permanent impairment. *Guides*, Chap. 2 § 2.2a, pg. 21.  . . .   The AMA *Guides* provide that:

> The physician should assess the current state of the impairment according to the criteria in the *Guides*.  If an individual received an impairment rating from an earlier edition and needs to be reevaluated because of a change in the medical condition, the individual is evaluated according to the latest information pertaining to the condition in the current edition of the *Guides*.

*Guides to the Evaluation of Permanent Impairment* (6th ed. 2008) Chap. 2, § 2.5d.

25.     Green produced no evidence at the hearing to dispute the accuracy of the permanent impairment rating of either Dr. MacGuire or Dr. Nieves.  Instead, Green argued that the Division incorrectly compared the ratings in 2011 to his 2005 rating by Dr. Kaplan and erroneously determined that he was entitled to 0% increase in his PPI award.  The Division correctly determined that because the 2011 PPI ratings by Dr. MacGuire (7%) and Dr. Nieves (6%) were less than the 2005 rating of 21% by Dr. Kaplan, Green was not entitled to an increased PPI award.  …

[¶16] Green contends that the Commission's decision upholding the denial of additional PPI benefits is contrary to the PPI benefit statute, is not supported by substantial evidence, and is arbitrary and capricious. We disagree and address each argument in turn.

## A.     Statutory Challenge

[¶17] Green asserts that the decision to deny him additional PPI benefits is contrary to law for two reasons. First, Green argues that "different losses resulting in different impairment ratings utilizing different editions of the AMA Guide cannot be compared or combined to offset or reduce an award due to previous PPI awards." Second, Green argues that because his second surgery was the result of a second compensable injury, to a separate body part, and because the injury was to a body part different from the one for which he previously received a PPI award, he was entitled, as a matter of law, to a separate PPI award without a reduction for his first award. We reject both arguments because they are not supported by the applicable statute, this Court's precedent, or the record before us.

## 1.     Offset of Ratings under Different Editions of the AMA Guides

[¶18] Wyo. Stat. Ann. § 27-14-405 governs an injured employee's eligibility for, and the calculation of, a PPI award as follows:

> (f) An injured employee suffering an ascertainable loss may apply for a permanent partial impairment award as provided in this section.
> (g) An injured employee's impairment shall be rated by a licensed physician using the most recent edition of the American Medical Association's guide to the evaluation of permanent impairment. The award shall be paid as provided by W.S. 27-14-403 for the number of months determined by multiplying the percentage of impairment by sixty (60) months.

Wyo. Stat. Ann. § 27-14-405 (LexisNexis 2013).

[¶19] Wyo. Stat. Ann. § 27-14-405(g) requires that a physician rate an injured employee's impairment using the most recent edition of the AMA Guides, and this Court has interpreted that requirement to mean the edition of the AMA Guides in effect on the date that the injured employee has an ascertainable loss. *Anderson v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 157, ¶ 17, 245 P.3d 263, 269 (Wyo. 2010) ("The legislature clearly intended that the PPI be rated using the most recent edition at the time of the ascertainable loss."). We have also repeatedly recognized that the

8

Workers' Compensation Act bars an injured employee from receiving a double recovery of benefits, *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Singer*, 2011 WY 57, ¶ 13, 248 P.3d 1155, 1159 (Wyo. 2011); *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2003 WY 83, ¶ 11, 72 P.3d 799, 802 (Wyo. 2003); *State ex rel. Wyoming Worker's Compensation Div. v. Colvin*, 681 P.2d 269, 273 (Wyo. 1984), and that to avoid a double recovery, an injured employee's subsequent impairment rating must be offset by an earlier impairment rating of the same body part. *Anderson*, ¶¶ 5, 17, 245 P.3d at 265, 269 (upholding Division's denial of PPI benefits where subsequent rating of lower back impairment was lower than earlier rating); *Taylor*, ¶ 13, 72 P.3d at 803 (upholding hearing examiner's reduction of foot PPI rating by earlier rating and award).

[¶20] Given both the clear statutory mandate that any impairment rating be calculated using the most recent edition of the AMA Guides and this Court's precedent recognizing that the Act requires a comparison of an injured employee's impairment ratings to prevent a double recovery, we must reject Green's suggestion that ratings calculated under different editions of the Guides cannot be compared. Earlier and subsequent impairment ratings must be compared and offset to avoid a double recovery, and there will simply be occasions when, by the time an injury progresses to the point of requiring additional medical intervention and another impairment rating, a new edition of the AMA Guides has issued.

[¶21] Indeed, that is precisely what happened in *Anderson*. *See Anderson*, ¶ 17, 245 P.3d at 268-69 (upholding Division's denial of PPI benefits based on comparisons of lower back impairment ratings under 5th and 6th editions of Guides). While this Court did not explicitly address in *Anderson* a legal challenge to the comparison of ratings under different editions of the AMA Guides, we did uphold the Division's denial of benefits based on such a comparison. In so ruling, we explained:

> Mr. Anderson essentially asserts that the 6th edition does not provide the most reliable guidance in determining a PPI rating. He supports his assertion with excerpts from a letter from Dr. Clyde which describes the 6th edition as "ambiguous" and "difficult to interpret." Mr. Anderson also contends that several states have discredited or rejected the 6th edition in determining impairment, but provides no authority for this assertion. We note that Dr. Kaplan also performed a PPI rating after Mr. Anderson had reached maximum medical improvement following the second surgery and did not indicate that the 6th edition was unworkable or unreliable. ***More significantly, this Court is not in a position to decide which edition provides the most reliable guidance. The legislature clearly intended that the PPI be rated using the most recent edition at the time of the***

9

***ascertainable loss.*** The 6th edition of the AMA Guides was the most recent edition when Mr. Anderson reached maximum medical improvement following his second surgery. The OAH's determination that Mr. Anderson's PPI was properly rated according to the 6th edition was in accordance with the law.

*Anderson*, ¶ 17, 245 P.3d at 268-69 (emphasis added and footnote omitted).

[¶22]  In other words, this Court has recognized that whatever alleged deficiency in ratings may result from using the most recent edition of the AMA Guides, whether that is unreliability in the rating itself or a change in methodology between editions that affects rating comparability, that is not a basis for this Court to ignore the clear legislative mandate.  Wyo. Stat. Ann. § 27-14-405(g) unambiguously directs that the most recent edition of the AMA Guides be used to calculate an impairment rating.  The statute provides no exception to its mandate that would allow an earlier edition to be used when the impairment rating to be compared and offset was calculated from the earlier edition, and it is not for this Court to judicially insert such an exception.  We thus conclude the Division acted in accordance with law in comparing and offsetting Green's lower back impairment ratings under the 5th and 6th editions of the AMA Guides and in denying additional PPI benefits based on that offset.

## 2.    Offset of Ratings of Different Body Parts

[¶23]  We turn next to Green's contention that the denial of additional PPI benefits was not in accordance with law because the impairment presently being rated was to a body part different from the one for which he previously received a PPI award.  Green argues that because it is a separate body part at issue, he was entitled, as a matter of law, to a separate PPI award without a reduction for his first award.

[¶24]  This Court recently addressed how a physician uses the AMA Guides, and in particular the edition of the Guides at issue in this appeal, to calculate whole body impairment ratings.  We observed:

> According to Wyo. Stat. Ann. § 27–14–405(g), an impairment "shall be rated by a licensed physician using the most recent edition of the American Medical Association's guide to the evaluation of permanent impairment." The Guides explain that an "[i]mpairment rating enables the physician to render a quantitative estimate of losses to the individual as a result of their health condition, disorder, or disease. ***Impairment ratings are defined  by anatomic, structural, functional, and diagnostic criteria***." *AMA*

10

*Guides,* at 5. The Guides use the concept of "whole person impairment," which takes into account "the severity of the organ or body system impairment and the resulting *functional limitations of the whole person.*" *Id.* at 21 (emphasis in original). ***When an employee has multiple impairments, the Guides require each impairment to be calculated individually and then combined to reach a whole person impairment rating.*** A physician is instructed to "[c]ombine multiple impairments for a final composite whole person impairment number, ... [d]iscuss how individual ratings were combined or added to create a final number[, and] ... [i]nclude a summary list of impairments and impairment ratings by percentage, including calculation of the whole person impairment, as appropriate." *Id.* at 28. The Guides' requirement that impairments be individually rated permits identification of the particular injuries, and consequently, the particular components of awards, that are related to a determination of permanent total disability.

*Singer,* ¶ 18, 248 P.3d at 1160-61 (emphasis added).

[¶25]  Based upon this analysis, we agree with Green that a PPI award for one body part should not be offset by an award for an entirely different body part.  Where Green's argument fails, however, is in the record before this Court.  The record does not support Green's contention that his present impairment rating is for a different body part.

[¶26]  We note at the outset that Green does not dispute the accuracy of or basis for any of the impairment ratings, either Dr. Kaplan's 2005 rating or the 2011 ratings of Drs. MacGuire and Nieves.  It is those ratings themselves that show that they were each of the same body part.  In Dr. Kaplan's 2005 rating, he reported that he calculated Green's impairment rating based on Green's 2004 work injury to his lumbosacral spine and the resulting two-level fusion from L4 through S1.  In the 2011 ratings of Drs. MacGuire and Nieves, both physicians reported that in calculating Green's current impairment rating they considered the combined effect of Green's original 2004 work injury and his three-level lumbar fusion—including the initial two-level fusion in 2005 and the subsequent one-level fusion in 2010.  The 2011 impairment calculations addressed the 2010 fusion, but they also included in their calculations both the part of Green's spine and the fusion surgeries previously evaluated in the original 2005 impairment rating of Green's lumbar spine.  The 2005 and 2011 evaluations thus rated the same body part, and the Division acted in accordance with law in comparing and offsetting the 2005 and 2011 ratings.

## B.      Substantial Evidence / Arbitrary Capricious Challenge

[¶27] In his final assignment of error, Green argues that the Commission's decision is unsupported by substantial evidence and arbitrary and capricious because

> [i]t is not medically or factually logical, . . ., to determine that a claimant receiving an impairment rating who then undergoes additional fusion-type spinal surgery could be adjudged to have less of an impairment (physical loss) than before having the surgery.

Green then requests that this Court reverse the Commission's decision and remand "for an award of either the 7% or 6% PPI rating assigned to Appellant."

[¶28] Green essentially argues that he was entitled to a PPI award of 6-7% over and above any PPI award he has already received. We reject this argument for the same reason the Commission rejected it. Green presented no evidence to support his claim, and as the Commission concluded, he "failed to meet his burden of proof to show by a preponderance of the evidence that in October 2011 he had a permanent impairment greater than the 21% rating upon which he was awarded PPI benefits in 2005." As this Court explained in rejecting a similar claim:

> Himes' arguments on appeal confuse the burden of proof. In her second issue, Himes alleges the Commission committed error by upholding the PPI rating of 5% to her cervical spine. She argues the 5% was not supported by substantial evidence. This argument fails to recognize that it is not the Division's burden to substantiate its PPI rating; it is her burden to prove she is entitled to a higher PPI rating.
>
> > The burden is assigned to the claimant ... to establish every essential element of his claim by a preponderance of the evidence. *Deroche v. R.L. Manning Company*, Wyo., 737 P.2d 332 (1987); *McCarty v. Bear Creek Uranium Company*, Wyo., 694 P.2d 93 (1985); *Alco of Wyoming v. Baker*, Wyo., 651 P.2d 266 (1982). The Wyoming rule is in accord with the general rule requiring that the party asserting a change of condition (increase or decrease of incapacity) must assume the burden of proof whether the party be claimant or employer. 3 A. Larson, Workmen's Compensation Law § 81.22(c) (1983). In invoking § 27-12-606, W.S.1977 [precursor to § 27-14-605(a)], [the claimant] assumed the burden of demonstrating "increase of incapacity due solely to the

12

injury."

*Lehman v. State ex rel. Wyoming Workers' Comp. Div.*, 752 P.2d 422, 425 (Wyo. 1988).

Instead of putting on affirmative proof of the essential elements of her claim, she simply argued that the Division incorrectly limited the scope of the impairment rating. The primary argument advanced in her brief is that the "matter should be remanded to the Division for an appropriate rating with regard to all of the problems previously treated operatively, including her shoulder, thoracic and lumbar spine." The purpose of the contested case hearing was for her to prove the nature and extent of her permanent physical impairments and that such impairments were directly related to her work accident. She failed to do so. The Commission correctly refused to grant Himes a PPI rating above the 15% she has already been awarded because she failed to carry her burden of proving all essential elements of her claim to a higher PPI rating.

*Himes v. Petro Eng'g and Constr.*, 2003 WY 5, ¶¶ 16-17, 61 P.3d 393, 398-99 (Wyo. 2003) (footnote omitted).

[¶29]  On these same grounds, we reject Green's argument that the Commission's decision was not supported by substantial evidence and was arbitrary and capricious.  The burden was on Green to show that his impairment was higher than that calculated by the Division and to show that a subsequent surgery means there must be an increased impairment.  Green did not make that showing.

## CONCLUSION

[¶30]  The Commission's denial of Green's request for a higher PPI rating is supported by the record and in accordance with law.  Affirmed.

13