2017 WY 91

**SWEETWATER COUNTY SCHOOL DIS-TRICT NUMBER ONE, State of Wyoming, Appellant (Respondent),**

v.

**Donna GOETZ, Appellee (Petitioner).**

**S-16-0251**

Supreme Court of Wyoming.

August 3, 2017

Representing Appellant: Jon Aimone and Kari Moneyhun of Lemich Law Center, Rock Springs, Wyoming. Argument by Mr. Aimone.

Representing Appellee: Gregory P. Hacker of Hacker, Hacker & Kendall, P.C., Cheyenne, Wyoming

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

DAVIS, Justice.

[¶1] Appellee Donna Goetz was terminated from her position as a custodian at the Rock Springs Junior High for stealing or attempting to steal a backpack containing an iPad which belonged to a student. The Board of Trustees of Sweetwater County School District No. 1 upheld the termination, finding that Goetz was provided adequate pretermination process, and that there was cause for termination. On a petition for review, the district court found that Goetz was not provided adequate pretermination process, and remanded to the Board for reinstatement effective the date of termination. We reverse the district court decision and reinstate the Board's order upholding Goetz's termination.

## ISSUES PRESENTED

[¶2] Although the parties state the issues in varying ways, we believe they boil down to this:

> Was the Board of Trustees' decision that Goetz received adequate pretermination due process legally correct and supported by substantial evidence?

## FACTS

### Pretermination Events

[¶3] Appellee Donna Goetz had been employed as a custodian by Appellant Sweetwater County School District No. 1 for about fifteen years, and was working at the Rock Springs Junior High at the time of the events involved in this case. Some of the key events were captured on a security camera.

[¶4] June 5 was the last day of school in 2014. For a few days before the last day, items in the school's lost and found area were customarily moved to a table in a main hallway in the hope that students would pick up anything they had lost before the school year ended. The table is in plain view of the security camera.

[¶5] The last day of school is a busy time for the custodial staff, as they must clean everything in the building. By around 3:30 p.m. on June 5, virtually all of the students had left, probably because they had no interest in hanging around as their summer vacation began. The video shows a person identified in testimony as the school's registrar placing two bags on the lost and found table.

[¶6] Approximately twenty-eight minutes later, the video shows a woman pushing a large rolling trash can the parties called a

"Brute," evidently because of its brand name. This woman was identified as Mrs. Goetz in the record. She was accompanied by another woman identified as her supervisor, Candice Estep. The video shows Goetz picking up a bag, looking briefly inside, and then carrying the bag with her as she pushes the Brute toward a door and leaves the camera's view. The record indicates that Ms. Estep was going to help Goetz empty the full Brute. Goetz claimed that she picked the bag up to take it to the school office because it seemed to have important papers in it. Goetz commented to Estep that the bag was a great size and wondered if it would fit her tablet.

[¶7] After the two emptied the Brute, Goetz placed the bag in the bottom of it. She contended that this is how custodians often carry things when their Brutes are empty. There is some dispute in the testimony and documentation as to whether she covered the bag with an empty garbage bag or not—Goetz denies that she did. In any event, the video shows her passing through the area a few times, and the record reflects that she did not take the bag to the school office although it was nearby. Goetz claimed to have forgotten about it.

[¶8] Goetz later encountered Junior High Principal Tina Johnson and a student searching the lost and found table. The student had returned to school and reported that his bag, with an iPad in it, was missing. Goetz and Johnson spoke, and Johnson told Goetz that they were searching for a black satchel. Goetz replied that the student should leave his name so he could be called if they found the bag. Goetz did not mention the bag in the bottom of the Brute at that point.

[¶9] Johnson then viewed the security video, and saw the portion in which Goetz took the bag. She asked Estep what Goetz had done with it, and Estep told her it was in the Brute. Johnson located Goetz and asked for the bag, which Goetz gave to her, saying that she didn't think this was the bag Johnson had been talking about because it was gray and black, not black. She later testified that she also did not believe the bag was a satchel, either. Johnson testified that she looked in the bag and immediately saw the iPad in

what she described as an obvious fluorescent-colored case.

[¶10] On June 6, 2014, the school's head custodian Marie Hall met with Goetz to discuss what had happened. Goetz told her that she planned to take the bag to the office when she finished other work. She also expressed concern that the staff would think that she was stealing the backpack. When Hall asked for a written statement, Goetz produced one that she had already prepared. In the statement, Goetz expressed concern about how these events might appear to others, and indicated that she was not one to cause her peers to question her honesty and truthfulness. She then made a second written statement dated June 6, 2014, which is generally consistent with the first.

[¶11] Goetz had a second meeting with Hall and Principal Johnson on June 12, 2014. Goetz indicated that she felt like she was being accused of stealing and denied that she was in fact trying to steal the bag.

[¶12] Goetz had a third meeting with Kelly McGovern (then Director of Human Resources and Assistant Superintendent of Schools), Mark Portillo (District Director of Custodial Services), and Principal Johnson on July 17, 2014. Before the meeting began, Goetz asked if the meeting could result in termination or disciplinary action, and McGovern responded that she was only gathering facts at the time, and that she would be showing Goetz some video and asking her some questions.

[¶13] Goetz then asked for representation from a fellow employee trained in advocacy by the Wyoming Education Association, Fredann Soto. Goetz was herself trained as an employee advocate. Soto was summoned and arrived before the meeting began.

[¶14] The group went through pertinent portions of the video and discussed what was shown on it and what had happened. Ms. Soto actively participated on Goetz's behalf according to a nine-page single-spaced detailed summary of the meeting.[1] The questioning of Goetz was fairly pointed according to that summary. After the summary was

---

1. It could almost be called a transcript.

prepared, both Soto and Goetz signed off as to its accuracy, along with McGovern, Portillo, and Johnson. In addition, Soto and Goetz met after the meeting, and Goetz submitted an additional statement to clarify her earlier ones. In it she indicated that she only took a quick glance into the bag and did not realize it contained an iPad, and that Johnson had not mentioned the iPad to her when they spoke at the lost and found table.

[¶15] As the meeting was coming to a close, Goetz asked McGovern (with Soto present) if she could ask a question "off the record." According to McGovern, she asked if the District "would take into account all of her years with the District as she has never done anything like this before."

[¶16] After that, McGovern recommended to Mathew Neal, the Superintendent of Schools for the District, that Goetz be terminated, and he evidently agreed with the recommendation. A fourth meeting involving Goetz, Soto, McGovern, Portillo, and Johnson took place on August 14, 2014. McGovern presented Goetz a letter she had authored, which terminated her employment and explained the reasons for doing so, and she read the letter to her. McGovern asked Goetz if she had anything to add, and Goetz replied "No, and I'm not going to sign this," referring to an acknowledgement of receipt on the letter.

### Proceedings Before the Board of Trustees

[¶17] The policy under which Goetz was terminated provided as follows:

> The Board and/or the Superintendent may suspend or dismiss any classified employee for incompetency, neglect of duty, immorality, insubordination, falsification or any other good or just cause.

Sweetwater Cty. Sch. Dist. Policy GDPD.

[¶18] The parties agree that Goetz did not serve at-will, and that she was therefore entitled to some form of due process before she could be terminated. Goetz's counsel timely requested a post-termination contested case hearing before the Board of Trustees. There was no objection to that request, and the parties began the process of moving the case to a hearing. A hearing officer was appointed to manage the process and oversee the hearing ultimately held.

[¶19] On June 30, 2015, Goetz's attorney filed a "Due Process Objection" challenging the procedures utilized before she was terminated. For purposes of this appeal, the key contention raised was that the process utilized did not comply with the requirements of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Goetz claimed that she was not adequately informed of the charge against her before she was terminated, and that she was not told that she faced possible termination before she was actually fired. She claimed that *Loudermill* and its progeny required notice of the possible outcome.

[¶20] The Board considered this issue as part of the hearing it ultimately held on June 30 and July 1 of 2015. It also considered whether there was cause to terminate Goetz. It adopted findings of fact and conclusions of law on September 14, 2015. It concluded that Goetz had access to the information and material on which the termination was based (the alleged taking of the bag and iPad), and four opportunities to tell her side of the story. It also found that her claim that she did not know her job was in jeopardy was implausible given her training as an employee advocate and the circumstances. Finally, it noted that there was no prejudice from any claimed defect in the pretermination process because Goetz had no further information to offer beyond what she provided in the three meetings before she was terminated.

[¶21] The Board also concluded that the totality of the evidence showed that Goetz took and kept the bag with the intent of keeping it for herself and not returning it. It therefore upheld her termination.

### Review by the District Court

[¶22] Goetz timely petitioned the District Court for the Third Judicial District (Sweetwater County) for review as permitted by the Wyoming Administrative Procedure Act. Wyo. Stat. Ann. § 16-3-114(a) (LexisNexis 2017). After briefing, the court issued an *"Order Affirming in Part, Reversing in Part*

*and Remanding.*"[2] Although it noted some errors in the Board's findings, it concluded that there was substantial evidence to support the Board's determination that there was just cause to terminate. However, it also found that the District failed to give adequate notice of the allegations against Goetz, and that she was not given adequate notice that her employment was in jeopardy of termination. It also found that these shortcomings were not harmless. It therefore directed that Goetz was to be reinstated effective the date of her termination. The District then timely perfected this appeal.

## STANDARD OF REVIEW

[¶23] When an appeal is taken from a district court's review of an administrative agency's decision, we examine the case as if it had come directly from the agency, giving no deference to the district court's decision. *Hurt v. State ex rel. Dep't of Workforce Servs.*, 2015 WY 106, ¶ 9, 355 P.3d 375, 377-78 (Wyo. 2015) (citing *Guerrero v. State ex rel. Wyo. Dep't of Workforce Servs., Workers' Comp. Div.*, 2015 WY 88, ¶ 11, 352 P.3d 262, 265 (Wyo. 2015)). We review an agency's conclusions of law de novo, and will affirm only if its conclusions are in accordance with the law. *Hurt*, ¶ 10, 355 P.3d at 378 (citing *Middlemass v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 118, ¶ 13, 259 P.3d 1161, 1164 (Wyo. 2011)).

[¶24] In this case, the Board made factual findings which may bear on the adequacy of the pretermination due process. As we have explained:

[W]e review the agency's findings of fact by applying the substantial evidence standard. *Dale [v. S & S Builders, LLC*, 2008 WY 84] , ¶ 22, 188 P.3d [554,] at 561 [ (Wyo. 2008)]. Substantial evidence means " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Guerrero*, ¶ 12, 352 P.3d at

266, quoting *Bush v. State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citation omitted). "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Kenyon v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 11, 247 P.3d 845, 849 (Wyo. 2011) (citation omitted).

If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale*, ¶ 22, 188 P.3d at 561 (citations omitted).

*Hurt*, ¶ 10, 355 P.3d at 378.[3]

## DISCUSSION

[¶25] Both parties quite correctly focus on the *Loudermill* case. Before *Loudermill* was decided in 1985, a plurality opinion in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), was deemed to set the standard for due process for public employees. That case suggested that the employer could not only decide whether an employee would be at-will or terminable only for cause,

---

2. This appears to actually be an order reversing, because the court ultimately ordered Goetz reinstated.

3. We may also review administrative decisions to determine if they are arbitrary and capricious as a "safety net" when there is a claim that an

agency failed to admit clearly admissible evidence or failed to produce adequate findings of fact and conclusions of law. *Rogers v. Russell Const. Co., Inc.*, 2016 WY 80, ¶ 15, 376 P.3d 1172, 1175 (Wyo. 2016). That standard of review does not apply to this appeal.

but also that because the grant of a substantive right is so intertwined with the procedure employed in determining that right, an employee must "take the bitter with the sweet." *Loudermill,* 470 U.S. at 154-55, 94 S.Ct. at 1643-44. This meant to many that the employer, having created a property right in employment, could make the procedures to protect that right as limited as it wished. The *Loudermill* court strongly disagreed.

[¶26] The facts of *Loudermill* are not terribly important to the disposition of this appeal, but they are worth mentioning. Loudermill was a security guard for the Cleveland Board of Education, and he indicated on his application that he had never been convicted of a felony. *Loudermill,* 470 U.S. at 535, 105 S.Ct. at 1489-90. The Board later discovered that he had been convicted of grand larceny, and its business manager terminated him for dishonesty without any opportunity to explain (he claimed that he thought the conviction was a misdemeanor). He was provided a hearing after termination under a statutory procedure, and a referee recommended reinstating him, but the Cleveland Civil Service Commission upheld the termination nonetheless.[4] *Id.* at 536, 105 S.Ct. at 1490.

[¶27] Loudermill sued in federal court, claiming that the statutory procedure was unconstitutional because it deprived him and other parties of liberty and property without due process. The district court dismissed this claim, holding that Loudermill had to live with the process Ohio provided, basically applying the "bitter with the sweet" analysis of *Arnett. Id.*

[¶28] The case eventually found its way to the United States Supreme Court. The Court noted that property interests are not created by the constitution, but instead by rules or understandings from independent sources such as state law. *Id.* at 540-41, 105 S.Ct. at 1492-93.[5] However, it rejected the notion that

state law could define the procedures utilized to protect a property right:

> The point is straightforward: the Due Process Clause [of the Fourteenth Amendment[6]] provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."

*Id.* at 541, 105 S.Ct. at 1493.

[¶29] That left the question of what process was due a public employee possessing a property right in employment. The Court held that the need for some form of pretermination hearing was "evident from a balancing of the competing interests at stake. These are the private interests in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Id.* at 542-43, 105 S.Ct. at 1493.

[¶30] Balancing these factors led the Court to conclude that a pretermination hearing "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46, 105 S.Ct. at 1495. It fleshed that determination out to some extent:

---

4. *Loudermill* also involved a companion case in which a bus mechanic was fired for failing an eye examination and then not retesting, without a hearing. *Id.*

5. In this case, there is no dispute that Goetz had a property interest based on the policy set forth above under Wyoming law, and so we skip that part of the analysis.

6. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1.

The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 546, 105 S.Ct. at 1495 (citations omitted). The Court held that this limited pretermination hearing was sufficient in light of the post-termination process available in Ohio. *Id.* at 547, 105 S.Ct. at 1496.

[¶31] The United States Supreme Court has not had much occasion to elaborate further on the nature of the required pretermination hearing. In *Gilbert v. Homar*, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), a police officer was suspended without pay for an indefinite period after being charged with possession of marijuana, and without a pre-suspension opportunity to explain. The Court referred to *Loudermill*, which it indicated required "a very limited hearing prior to [Loudermill's] termination, to be followed by a more comprehensive post-termination hearing." *Gilbert*, 520 U.S. at 929, 117 S.Ct. at 1811. It also pointed out that:

It is by now well established that " 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)

*Id.* at 930, 117 S.Ct. at 1812.

[¶32] After analyzing the interests implicated as suggested by *Loudermill*, the Court decided that Officer Homar was not deprived of pretermination due process given the speed with which the police department had to act. *Gilbert* is of course distinguishable from this case. Homar was suspended indefinitely pending an investigation, but he was not terminated. Nonetheless, the Supreme Court took the opportunity to emphasize the limited nature of the required process. As one commentator puts it:

*Loudermill* should not be read as a definitive statement of an absolute minimum in all cases, since, as the Court admitted, its reasoning depended on the availability of a reasonably prompt and reasonably comprehensive post-termination hearing. The more elaborate the post-termination hearing, the more informal the pretermination procedures may be.

2 Isidore Silver, *Public Employee Discharge and Discipline* § 17.06, at 1156 (3d ed. 2001).

[¶33] Without additional guidance from the Supreme Court, lower federal and state courts have struggled with the required process on a case-by-case basis. We find cases saying that an informal meeting with a supervisor, at which notice and an explanation are provided, if accompanied by a reasonable opportunity to respond, are sufficient. *Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989). That court elaborated that:

The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted. The pretermination hearing is intended to supplement, not duplicate, the more elaborate post-termination hearing. Because the post-termination hearing is where the definitive fact-finding occurs, there is an obvious need for more formal due process protections at that point. To duplicate those protections at the pretermination stage would cause unnecessary delay and expense while diffusing the responsibility for the ultimate decision to terminate an employee. The idea of conducting two identical hearings runs counter to traditional principles of adjudication.

*Id.* at 1458.

[¶34] Goetz cites *Cotnoir v. Univ. of Maine Sys.*, 35 F.3d 6 (1st Cir. 1994). In that case,

Cotnoir was investigated concerning a student who evidently inappropriately received certain academic credits. The university provost conducted an investigation and interviewed Cotnoir and others, and then completed a report. The university president wrote to Cotnoir and offered him a meeting about the issues raised by the provost, although he did not provide him with a report. They met, and the president asked a number of questions, which Cotnoir answered. He was then terminated without further pretermination process. He sued in federal district court, claiming a deprivation of his civil rights under 42 U.S.C. § 1983, and the district judge granted summary judgment on his claim that he was denied adequate pretermination due process. The First Circuit held that there was inadequate notice of the charge, inadequate explanation of the evidence involved, and that the post-termination hearing did not cure the violation. *Id.* at 11-13. *See also Matthews v. Harney Cty. Sch. Dist. No. 4,* 819 F.2d 889, 892-93 (9th Cir. 1987) (school board members unhappy with teacher's responses to answers to their questions did not provide adequate pretermination notice of the charges).

[¶35] One of our cases seems to suggest more specific procedures. In *Mondt v. Cheyenne Police Dep't,* 924 P.2d 70 (Wyo. 1996), this Court observed that:

If a full evidentiary hearing is not provided until after suspension, the following risk-reducing procedures must be afforded before suspension: written notice of the charges against her, knowledge of the basis of those charges either by explanation or by reviewing the file containing the report of the internal affairs investigation conducted and, in the case of the denial of the allegations, an effective opportunity to respond either in person or in writing to an impartial decision maker.

*Id.* at 82 (citing *Little v. City of Jackson,* 375 So.2d 1031, 1035 (Miss. 1979)).[7]

[¶36] However, that comment must be considered in context. *Mondt* was a certified

question dealing with a civil service statute that required the process described above for policemen and firemen for whom discharge, reduction in grade or compensation was sought. *Mondt,* 924 P.2d at 77. Mondt was provided no pretermination process, and she was denied a post-termination hearing as well, even though the facts supporting her dismissal were disputed. The holding in *Mondt* was therefore correct for a police officer under the civil service rules in light of the absence of any due process whatsoever.

[¶37] A more general statement of the requirements for pretermination process can be found in *Davis v. City of Cheyenne,* 2004 WY 43, 88 P.3d 481 (Wyo. 2004):

[P]ublic employees must be given notice sufficient to afford them a reasonable opportunity to know the claims of the opposing party and meet them. The notice must contain adequate and specific notice of the charges for which the employee is being terminated. The notice must be sufficient to afford the employee a real and meaningful opportunity to respond to every charge or allegation brought against him as a basis for termination. Absent an opportunity to respond to every allegation that is the basis for termination, a public employee has not been given a real and meaningful opportunity to be heard and is deprived of due process.

*Id.* ¶ 17, 88 P.3d at 488 (citations and quotation marks omitted) (quoting *Lucero v. Mathews,* 901 P.2d 1115, 1120 (Wyo. 1995)). *See also Metz v. Laramie Cty. Sch. Dist. No. 1,* 2007 WY 166, ¶¶ 33, 35, 173 P.3d 334, 343-44 (Wyo. 2007) (relying on the standard in *Lucero* and *Davis* ).

[¶38] We must analyze the adequacy of the pretermination process on the facts of this case, looking at the first three meetings under the flexible standard imposed by *Loudermill.* It is clear that the decision to terminate Goetz had been made by the last meeting, and that she was terminated when

---

7. We note that these cited cases were actually decided before *Loudermill.* And there is no pretermination due process right to written notice (*Loudermill* says oral or written notice will do), and the person officiating at a pretermination

meeting need not be impartial. 2 Silver, *supra,* § 17.06, at 1161; *Schaper v. City of Huntsville,* 813 F.2d 709, 714 (5th Cir. 1987), reh'g en banc denied 818 F.2d 865 (5th Cir. 1987); *Panozzo v. Rhoads,* 905 F.2d 135, 140 (7th Cir. 1990).

that decision was communicated. This is not what *Loudermill* and its progeny contemplate. However, the first three meetings may have provided adequate pretermination process.

[¶39] The district court determined that Goetz did not have notice of the basis for her termination. However, the record clearly reflects that she did. She was asked about the bag and iPad by her supervisor, and then by the principal and head custodian, and she was then taken step by step through the video by McGovern. During this third pretermination meeting, she was asked accusatory questions such as why she picked up the bag, why she put it in the bottom of the Brute, and why she didn't drop the bag at the office when she passed nearby a number of times, as shown on the video. At the initial meeting with her supervisor, she had already prepared a statement explaining her actions. She prepared two supplemental statements addressing the issues after that, with each explaining that she possessed but did not intend to steal the iPad. She in fact had adequate notice of the claimed wrongdoing and the evidence supporting it due to the repeated meetings and close examination of the video and questions about her explanations. *See Panozzo v. Rhoads*, 905 F.2d 135, 139 (7th Cir. 1990) (officer was provided an adequate explanation of the evidence against him due to the allegations themselves).[8]

[¶40] The district court also found that Goetz was not provided adequate notice of the proposed action of termination. However, it is clear that Goetz knew the accusations against her were grave. It should be self-evident that a school district cannot allow an employee who would steal valuable student property to continue to work for it. It could not have been a good sign that she was required to meet with ever-escalating levels of supervisors to discuss the details of the incident – she could not have been expecting an award for her job performance. She clearly recognized her jeopardy when, despite Mc-

Govern's ill-conceived response to her question about disciplinary consequences, she asked for and received an employee advocate. She was subjected to very pointed questions about the video and her actions. She herself was a trained and experienced employee advocate. She also asked McGovern to take into account her fifteen years of service, and that she had "never done anything like this before." To conclude that she had no notice that she could be fired would be to ignore the obvious.

[¶41] Finally, the district court also found that the failures it identified were not harmless. We disagree. Goetz admitted that she had presented everything she had to present before the final meeting with Deputy Superintendent McGovern and others when she was terminated. She had told her side of the story orally and through three statements, and she reminded McGovern of her good service up to that point before the final meeting at which she was terminated. Our view of the evidence at the hearing also supports this conclusion. Although, as might be expected, further details emerged at the hearing, Goetz's response was basically the same: she took the bag planning to take it to the office, not knowing it contained an iPad; she put it in the Brute because she didn't have a better way to carry it; she did not understand the bag to be the one Johnson was looking for; and she didn't return the bag to the office because she forgot about it.

[¶42] We hasten to point out that situations will not always be as clear as the one in this case. We can well imagine a case in which an employee is asked about aspects of his or her job performance, and has no reason to suspect that they may be considered grounds for termination. *Matthews v. Harney Cty. Sch. Dist.*, 819 F.2d at 890; *Urban v. Tularosa*, 161 F.3d 19 (10th Cir. 1998) (unpublished opinion) (police officer terminated after being questioned about his credit card use by the village council without reason to understand that his job was in jeopardy).

---

8. We are aware that another panel of the Seventh Circuit later disagreed in some respects with a portion of the *Panozzo* decision indicating that written notice of the claimed wrongdoing the night before a hearing was sufficient. *Staples v. City of Milwaukee*, 142 F.3d 383, 386 (7th Cir.

1998). However, in *Staples*, the employee was called to a meeting for an entirely different purpose and then confronted with a different accusation. *Id.* at 384-85. As already noted, these cases can be intensely factual.

[¶43] For all of the reasons we have stated, however, we conclude that the Board's decision concerning the adequacy of the pretermination process was legally correct and supported by substantial evidence. The district court's ruling must therefore be reversed.

## CONCLUSION

[¶44] We reverse and remand to the district court, directing reinstatement of the Board's order finding adequate cause for termination because, on the facts of this case, Appellee received adequate pretermination process.